# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| VANCE LASTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 13-cv-03111 |
| v. | ) |
| | ) Judge Andrea R. Wood |
| SUPT. THOMAS, et al., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Vance Laster alleges that he was housed in a cell at the Cook County Jail ("Jail") that was so cold due to a broken window that the conditions of his confinement violated his right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution. He has sued Superintendent Thomas, the supervising official responsible for his housing, for the alleged violation of his civil rights under 42 U.S.C. § 1983. Before the Court is Superintendent Thomas's motion for summary judgment on Laster's claims. (Dkt. No. 40) For the reasons stated below, Laster has demonstrated that there is a disputed issue of material fact as to whether Superintendent Thomas acted with deliberate indifference to conditions of extreme cold in Laster's cell, and therefore summary judgment is denied.

## BACKGROUND

Unless otherwise indicated, the following facts gleaned from the parties' summary judgment filings[1] are undisputed.

---

[1] These include the parties' submissions under Local Rule 56.1 (N.D. Ill.). Local Rule 56.1 "is designed, in part, to aid the district court, which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information, in determining whether a trial is necessary." *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (internal quotation marks and citation omitted). Local Rule 56.1(a) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue and that

Laster was taken into the custody of the Cook County Department of Corrections ("CCDOC") on May 27, 2011. (Def.'s R. 56.1 Stmt. ("Def. SOF") ¶ 3, Dkt. No. 42.) He was originally housed in Division 1 of the Jail, but was transferred to Division 9, tier 2F, and housed in cell 2025. (*Id*. ¶¶ 3-4.) He was then moved to cell 2030, where he was housed for the time period relevant to his claims against Superintendent Thomas (*i.e.*, September 2012—March 2013). (*Id*. ¶ 4.) Thomas was the Superintendent of Division 9 during the entire time relevant to this suit; Superintendent Thomas was responsible for overseeing the operations of the division although he was not personally responsible for building maintenance. (*Id*. ¶ 2.)

Cell 2030 had cinderblock and slab walls, a window to the outside on the wall opposite the door, and two openings in the door (a window and a chuckhole). (*Id*. ¶ 8.) The cells on tier 2F were all situated around a common dayroom. (*Id*.) Cell 2030 had hot and cold water and a working toilet. (*Id*. ¶ 9.) Laster was generally allowed out of his cell twice a day and was able to take showers. (*Id*. ¶ 10.) Laster was given bedding, and his division had extra blankets and covers available. (*Id*. ¶¶ 19, 20.) He had long sleeve thermals and other clothes, and he was able to buy extra clothes from the commissary. (*Id*. ¶¶ 24, 25.) Although Laster's cellmate received an extra blanket, Laster claims that he himself never received any. (*Id*. ¶ 19.)

According to Laster, the lower portion of the window to the outside in cell 2030 was missing, causing the cell to feel very cold. (Pl.'s R. 56.1 Stmt. ("Pl. SAF") ¶¶ 5, 8, 9, Dkt. No. 50.) Although he does not know what the temperature was in his cell when it got cold, he claims

---

entitle the moving party to a judgment as a matter of law." *Petty v. City of Chicago,* 754 F.3d 416, 420 (7th Cir. 2014). "The non-moving party must file a response to the moving party's statement, and, in the case of any disagreement, cite specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (internal quotation marks and citation omitted); *see also* L.R. 56.1(b)(3)(A). Finally, Local Rule 56.1(b)(3)(c) "requires specifically that a litigant seeking to oppose a motion for summary judgment file a response that contains a separate statement . . . of any additional facts that require the denial of summary judgment." *Sojka v. Bovis Lend Lease, Inc.,* 686 F.3d 394, 398 (7th Cir. 2012) (internal quotation marks and citation omitted).

to have seen frost on the window. (Def. SOF ¶ 15.) Laster claims to have complained to Sergeant Wiggens, Sergeant Bray, Lieutenant Derden, and Superintendent Thomas about the window.[2] (*Id*. ¶ 13.) Sergeant Bray, Sergeant Wiggens, and Lieutenant Derdan do not recall Laster or his complaints. (*Id*. ¶¶ 14, 16, 17.) Laster's cellmate also claims to have complained about the broken window and the cold. (Pl. SAF ¶ 20.) Laster claims to have suffered four or five colds, with a stuffy nose, cough, and flu-like symptoms, but he does not recall having a fever.[3] (Def. SOF ¶ 27; Pl. SAF ¶ 26.) Laster claims that he asked to see a doctor on several occasions, but was not allowed to do so. (Pl. SAF ¶ 27.) He filed two grievances regarding the cell conditions that were signed by Denise Hughes, Correctional Rehabilitation Worker for Division 9. (*Id*. ¶¶ 21-23.) According to Hughes, she would have processed the grievances and provided them to the appropriate department and to Superintendent Thomas. (*Id*. ¶¶ 29, 30, 32.) Laster did not receive a response to his grievances. (*Id*. ¶ 35.)

CCDOC engineers conduct daily rounds three times each day to monitor and log temperature levels throughout the Jail. (Def. SOF ¶ 38.) In Division 9, the three daily temperature readings are taken from cells at the bottom and the top of each tower of cells, as well as where the air is discharged from the roof of the building. (*Id*. ¶¶ 38, 39.) According to Superintendent Thomas, if the three readings are all within the acceptable range, then every cell in between would also be within the acceptable range. (*Id*. ¶ 39.) The temperature logs from September 2012 through March 2013 show that the temperature readings throughout Division 9

---

[2] Sergeant Bray, Sergeant Wiggens, and Lieutenant Derdan are not defendants in this case.

[3] In connection with his Response to Superintendent Thomas's Motion, Laster submits an affidavit setting forth further allegations, including the allegation that he suffered flu-like symptoms. Although "a party may not avoid summary judgment by attempting to contradict his prior deposition testimony with a later affidavit, absent a plausible explanation for the inconsistency," "where the deposition testimony is ambiguous or incomplete . . . the witness may legitimately clarify or expand upon that testimony by way of an affidavit." *Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1007 (7th Cir. 1999). This Court will consider Laster's affidavit to the extent appropriate.

were always in the acceptable range. (*Id*. ¶ 40.) Superintendent Thomas claims that if there is a complaint about temperature conditions in a cell, but the temperature is ultimately found to be acceptable, no documents regarding the complaint are generated. (*Id*. ¶ 34.)

Sometime in the winter, Laster observed a technician checking the temperature on tier 2F. (*Id*. ¶ 11.) Superintendent Thomas also checked on the tier a few times a month. (*Id*. ¶ 28.) Laster claims to have told Superintendent Thomas about the broken window and cold cell, and that Superintendent Thomas responded that he would try to get the window fixed or get Laster extra blankets – neither of which happened. (*Id*. ¶ 29; Pl. SAF ¶ 14.) Laster does not claim, however, that Superintendent Thomas was ever present in his cell. (*Id*.) Superintendent Thomas does not recall Laster or a broken window in Laster's cell. (Def. SOF ¶ 30.) Superintendent Thomas did, however, learn about a crack in the window in cell 2030 through an audit after Laster was no longer housed there. (*Id*. ¶ 31.)[4]

## DISCUSSION

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Gross v. PPG Indus., Inc.,* 636 F.3d 884, 888 (7th Cir. 2011). In assessing whether the movant is entitled to judgment as a matter of law, all reasonable inferences from the evidence presented must be drawn in favor of the nonmoving party. *McCann v. Iroquois Mem'l Hosp.,* 622 F.3d 745, 752 (7th Cir. 2010). "The initial burden is on the moving party . . . to demonstrate that there is no material question of fact with respect to an essential element of the non-moving party's case." *Cody v. Harris,* 409 F.3d

---

[4] Although there appears to be some confusion among the parties as to whether Laster also asserts a claim for retaliation for filing grievances (*see* Laster Resp. at 4, Dkt. No. 48; Def. Reply at 6, Dkt. No. 51), the only claim at issue in this case is the claim relating to the conditions of cell 2030—in particular, the alleged cold temperatures. (5/31/2015 Order, Dkt. No. 8 (identifying Laster's claim "based on the conditions of [his] confinement against Superintendent Thomas" as the cognizable claim that would be allowed to go forward).) Any other theories raised in Laster's complaint were rejected upon initial review, and the Court will not consider such theories upon summary judgment or going forward.

853, 860 (7th Cir. 2005). "If the moving party meets this burden, the non-moving party must submit evidence that there is a genuine issue for trial. The existence of merely a scintilla of evidence in support of the non-moving party's position is insufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Delta Consulting Grp., Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133, 1137 (7th Cir. 2009) (internal citations omitted).

Although Laster does not have a constitutional right to live in comfort, he is entitled to adequate shelter, including protection from extreme cold. *Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997). When presented with a claim based on low cell temperature, courts consider several factors, including: "the severity of the cold; its duration; whether the prisoner has alternative means to protect himself from the cold; the adequacy of such alternatives; as well as whether he must endure other uncomfortable conditions as well as cold." *Id*. at 644. To avoid summary judgment, Laster must establish that there is a genuine issue of material fact regarding whether he was subjected to extreme cold conditions and whether Superintendent Thomas acted with deliberate indifference to those conditions—*i.e.*, that Superintendent Thomas "knew that [Laster] faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). Ultimately, to prevail it is not sufficient for Laster to show that Superintendent Thomas "acted negligently or that he . . . should have known about the risk. Instead, [Laster] must show that [Superintendent Thomas] received information from which the inference could be drawn that a substantial risk existed, and that [Superintendent Thomas] actually drew the inference." *Id*. (internal citations omitted).

Viewing the record in the light most favorable to Laster, a jury could find that cell 2030 was excessively cold. Laster and his cellmate both testified regarding the severity and duration of

the cold conditions, and Laster testified regarding the inadequacy of alternative means to protect himself from the cold. In addition, the record shows that a crack was found in the cell's window (albeit after Laster was no longer housed there). Laster further testified regarding the effect the conditions had upon his health—namely, that the conditions caused him to become sick.[5] In addition, although Superintendent Thomas produced evidence regarding standard temperature readings in Division 9, he has not produced evidence showing what the temperature of cell 2030 actually was during the time at issue. Although evidence regarding temperature readings throughout the building may be persuasive as to the issue of whether one cell in the building was excessively cold, it does not rise to the level sufficient to warrant summary judgment in Superintendent Thomas's favor on this issue.

There is also a disputed issued of material fact as to whether Superintendent Thomas knew that Laster faced a substantial risk of serious harm from the cold conditions and yet disregarded that risk by failing to take reasonable measures to address it. There is no evidence that Superintendent Thomas's job responsibilities included personal responsibility for the temperature at Division 9 (or in any given cell). There is, however, disputed evidence that Laster told Superintendent Thomas about the alleged extreme cold and that Superintendent Thomas told

---

[5] Superintendent Thomas objects that Laster's testimony on the subject is only "his subjective assessment that he had colds," that "there is no medical evidence he received any such diagnosis," and that Laster "does not possess specialized knowledge to provide a medical diagnosis," such that his testimony "should not be considered." (Def. Reply at 2, Dkt. No. 51.) However, Laster testifies as to his own experiences, and does not attempt to represent his testimony as expert medical diagnosis. Moreover, Laster asserts that he attempted to see a doctor (from whom he presumably could have gotten a medical diagnosis), but was not allowed to do so. To find that an inmate's testimony regarding health issues should be disregarded whenever he is not a doctor would result in a situation where a state could avoid liability by refusing to allow its inmates to see doctors, and then arguing that any of the inmates' claims regarding their medical issues should not be considered because the inmates are not doctors. The Court will not sanction such an inequitable rule.

Laster that he would address the issue,[6] and that Laster filed grievances[7] regarding the alleged extreme cold that may have reached Superintendent Thomas. It is up to the jury, not the Court on summary judgment, to make credibility determinations and weigh the evidence. Based on the record, summary judgment is not warranted.

The Court additionally finds unpersuasive Superintendent Thomas's argument that summary judgement is warranted for lack of availability of requested relief. At the very least, Laster's claim is entitled to go forward as to nominal or punitive damages for the alleged constitutional violation. *Calhoun v. DeTella*, 319 F.3d 936, 941 (7th Cir. 2003) ("Although § 1997e(e) would bar recovery of compensatory damages 'for' mental and emotional injuries suffered, the statute is inapplicable to awards of nominal or punitive damages for the Eighth Amendment violation itself."). Despite Superintendent Thomas's assertion to the contrary, Laster clearly requests punitive damages in this action. (Compl. at 6, Dkt. No. 7 ("I would like to be compensated in the amount of $30,000 and for punitive damages in the amount of $50,000 and anything else the Court sees fit.").)

Finally, Superintendent Thomas is not entitled to summary judgment on the basis of qualified immunity. "[Q]ualified immunity shields government employees from liability for civil damages arising from actions within the scope of their employment unless their conduct violated 'clearly established . . . constitutional rights of which a reasonable person would have known.'" *Board v. Farnham*, 394 F.3d 469, 476 (7th Cir. 2005) (quoting *Harlow v. Fitzgerald*, 457 U.S.

---

[6] Superintendent Thomas cites the unpublished Seventh Circuit opinion in *Robinson* on this issue, arguing that his personal liability cannot be established. The case is nonprecedential. Moreover, the situation in *Robinson* is distinguishable from that here—in *Robinson*, the inmate wrote a letter to the warden regarding his complaints, and the warden responded that he would forward the inmate's letter. *Robinson v. Welborn*, 107 F.3d 873 (7th Cir. 1997). Unlike here, there was no claim that the warden informed the inmate that he would personally take action to address the issue complained about.

[7] The Court notes that the issue here is not any alleged mishandling of grievances, but rather what Superintendent Thomas allegedly had knowledge of.

800, 818 (1982)). Even if a "defendant's alleged actions were improper to the point of being unconstitutional, the defendant is still entitled to qualified immunity unless the unconstitutionality of the actions was clearly established at the time of their occurrence." *Id.* at 477. "[A] clearly established constitutional right exists in the absence of precedent, where the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right. To that extent, government officials are considered 'on notice' that conduct is violative of established law if the state of the law at the time gave them 'fair warning' that their conduct would be unconstitutional." *Id.* (internal quotation marks and citations omitted) (second substitution in original).

Thus, to be entitled to qualified immunity, Superintendent Thomas must show that even if the conditions of Laster's cell reached the level of a constitutional violation, he was not on notice that such conditions would constitute a constitutional violation. He cannot do so. By the time of Laster's incarceration, there was ample caselaw making clear that a prisoner is entitled to protection from extreme cold. *See, e.g.*, *Dixon*, 114 F.3d at 642; *Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir. 1996); *Murphy v. Walker*, 51 F.3d 714, 721 (7th Cir. 1995). As such, Laster had a clearly established constitutional right to protection from extreme cold, and Superintendent Thomas was on notice that subjecting Laster to such conditions would constitute a violation of his constitutional rights.

## CONCLUSION

For the foregoing reasons, Superintendent Thomas's motion for summary judgment (Dkt. No. 40) is denied.[8]

ENTERED:

Dated: September 30, 2015

_____
Andrea R. Wood
United States District Judge

---

[8] Laster has included a section in his response entitled "Plaintiff is Entitled to Sanctions." (Pl.'s Resp. at 12, Dkt. No. 48.) The Court will not take action upon this "request," as Laster has not appropriately made his request in a motion as required under Federal Rules of Civil Procedure 7 and 11.